In the Matter of the Application of SAMUEL AUBIN NASH and Another, Individually and as Executors, etc., of SAMUEL Y. NASH, Deceased, Petitioners, for a Certiorari Order against THOMAS M. LYNCH and Others, Constituting the State Tax Commission of the State of New York, Respondents.

Third Department, June 21, 1929.

*Pattison & Pattison [Edward H. Pattison, Joseph F. McCloy, John L. McMaster and Leo Brady* of counsel], for the petitioners.

*Hamilton Ward, Attorney-General [Henry S. Manley, Assistant Attorney-General,* of counsel], for the respondents.

HILL, J. The State Tax Commission has presented its return in compliance with an order of certiorari to review its determination made in 1929 fixing the transfer tax in the estate of Samuel Y. Nash, who died on January 17, 1926, at Brookline, Mass., being then seized of real property located in the city of Troy, N. Y., of

the assessed value of $72,591.93 above taxes. He was survived by the two executors, his only children, heirs at law and devisees.

An assessment was made in 1926 and a tax of $1,451.84 assessed under the flat rate provision prescribed in article 10-A of the Tax Law (as added by Laws of 1925, chap. 143). Payment was made under protest, and an appeal taken, resulting in the annulment of the tax because of the unconstitutionality of the statute under which it was assessed. (*People ex rel. Nash* v. *Loughman*, 245 N. Y. 649.) After the annulment, upon request of the State Tax Commission, the executors filed a detailed return of decedent's property, in which they asserted that there was no law which required the filing of the return or the payment of any tax. The Commission by procedure provided in a new article 10-A of the Tax Law (as added by Laws of 1928, chap. 330) again assessed the tax, applying rates and allowing exemptions according to article 10 of the Tax Law as it existed prior to the unconstitutional amendment of 1925. This last assessment is the one which we are now reviewing. The tax assessed was $778.96, and the excess from the tax previously paid has been returned to the executors. They ask that the entire tax paid under the unconstitutional act of 1925 be returned to them.

Prior to 1925, article 10 imposed a tax and provided for its assessment and collection, with no distinction between residents and non-residents, as to procedure, exemptions or rates. The Legislature of that year split the scheme and system into two parts, and made one applicable to residents, the other to non-residents. This act was held to be discriminatory against non-residents under subdivision 1 of section 2 of article 4 of the Constitution of the United States. (*Smith* v. *Loughman*, 245 N. Y. 486.)

The doctrine that a general revenue statute should never be declared inoperative in all its parts because a particular part relating to a distinct subject may be invalid is well established. (*Field* v. *Clark*, 143 U. S. 649; *Berea College* v. *Kentucky*, 211 id. 45; *Pollock* v. *Farmers' Loan & Trust Co.*, 158 id. 601.) Yet "The question is in every case whether the Legislature, if partial invalidity had been foreseen, would have wished the statute to be enforced with the invalid part exscinded, or rejected altogether. The answer must be reached pragmatically, by the exercise of good sense and sound judgment, by considering how the statutory rule will function if the knife is laid to the branch instead of at the roots." (*People ex rel. Alpha P. C. Co.* v. *Knapp*, 230 N. Y. 48, 60.) The ultimate result sought by the Legislature is the determining factor whether the statute be rejected in whole or in part. (*Spraigue* v. *Thompson*, 118 U. S. 90; *Warren* v. *Mayor &*

*Aldermen of Charlestown,* 2 Gray, 84; *Pollock* v. *Farmers' Loan & Trust Co., supra; People ex rel. Alpha P. C. Co.* v. *Knapp, supra.*)

" There may be cases where one part of a statute may be enforced as constitutional, and another be declared inoperative and void, because unconstitutional; but these are cases where the parts are so distinctly separable that each can stand alone, and where the court is able to see, and to declare, that the intention of the Legislature was that the part pronounced valid should be enforceable, even though the other part should fail." (*Poindexter* v. *Greenhow,* 114 U. S. 270, 304.)

Had there been no transfer tax imposed prior to 1925, a decision that the statute is severable, with the unconstitutional part " exscinded " would be justified. (*People ex rel. Alpha P. C. Co.* v. *Knapp, supra.*) But there was taxation, both as to residents and non-residents, which the Legislature desired to continue. If the entire 1925 act, including the implicit repeal of former article 10 as to non-residents, is declared to be invalid, thus reviving the former statute, the intention of the Legislature will be accomplished, in so far as the State and Federal Constitutions will permit. The legislative intent to impose a tax on both residents and non-residents is effected by rejecting all of chapter 143 of the Laws of 1925, and reviving article 10 as it existed prior to 1925.

The attempt of the Legislature in 1928 to readopt article 10-A with the unconstitutional features removed was ineffective, because of its retroactive taxing feature (*Untermyer* v. *Anderson,* 276 U. S. 440), but its procedural provisions remain, as retroactivity in such field is not objectionable. The Tax Commission had authority to assess the tax anew, their determination was correct and should be confirmed.

VAN KIRK, P. J., HINMAN, WHITMYER and HASBROUCK, JJ., concur.

Determination confirmed, with fifty dollars costs and disbursements.