**VALLEY FORGE APARTMENTS,**
**Appellant,**

v.

**BOARD OF REVIEW OF JOHNSON COUNTY, Iowa, et al., Appellees.**

No. 2–56596.

Supreme Court of Iowa.

Feb. 18, 1976.

Shulman, Phelan, Tucker, Boyle & Mullen, Iowa City, for appellant.

Carl J. Goetz, Jr.; and Bartley Law Office, Iowa City, for appellees.

Heard before MOORE, C. J., and LeGRAND, REES, REYNOLDSON and McCORMICK, JJ.

LeGRAND, Justice.

Valley Forge Apartments owns and operates a multiple apartment complex in Iowa City which was assessed for tax purposes under Chapter 441, The Code, 1971, in the amount of $1,144,820. Valley Forge's protest to the Board of Review was unavailing. Upon appeal to the district court, the assessment was reduced to $1,031,040.

While defendants first filed notice of appeal to this court, Valley Forge later also took timely appeal from the trial court's decree. Under such circumstances, plaintiff is designated as appellant and defendants as appellees. *See* Rule 344(i), Rules of Civil Procedure.

Valley Forge raises only one issue. It asserts the court incorrectly used a capitalization rate of 10.5% in arriving at a valuation of the assessed property when the rate should have been 11%.

The Board's appeal challenges the reduction of the assessment, insisting the trial court erred for reasons set out in our later discussion.

We consider first the Board's appeal.

I. Plaintiff's property was valued by the assessor at $1,144,820, a figure adopted by the defendant Board on plaintiff's protest from the assessor's determination. On appeal to the district court under § 441.38, The Code, the valuation was changed to $1,031,040, a reduction of $113,780.

This figure was arrived at by combining separate valuations for the land ($79,740) and buildings ($951,300). The valuation on the land was left as established by the assessor. It is not an issue on this appeal. We are concerned only with the valuation of $951,300 placed on the buildings.

The basis for the assessment of real estate is found in § 441.21, The Code, which directs that real estate subject to taxation shall be valued at its actual value and then assessed at 27% thereof. Actual value is there defined as the fair and reasonable market value of the property.

The statute further provides that actual (or market) value is to be first determined by the use of comparable sales defined as "the fair and reasonable exchange in the year in which the property is listed and valued between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and each being familiar with all the facts relating to the particular property."

If value cannot be established by the comparable sale method "then the assessor may consider its productive and earning capacity, if any, industrial conditions, its cost, physical and functional depreciation and obsolescence and replacement cost, and all other factors which would assist in determining the fair and reasonable market value of the property but the actual value shall not be determined by the use of only one such factor."

While the manner of ascertaining actual value under the statute may change, the ultimate goal is always the same—to fix market value. See Maytag Co. v. Partridge, 210 N.W.2d 584, 587 (Iowa 1973). All parties agree the comparable sale method is here unavailable. Market value must therefore be ascertained by the alternative method, taking into consideration the applicable factors listed by the statute. See Maytag Co. v. Partridge, supra, 210 N.W.2d at 587–588.

In assessment appeals, § 441.21, The Code, places the original burden of proof upon the party who attacks the valuation. The statute then sets out this procedural rule:

"[H]owever, in protest or appeal proceedings when the complainant offers competent evidence by at least two disinterested witnesses that the market value of the property is less than the market value determined by the assessor, the burden of proof thereafter shall be upon the officials or persons seeking to uphold such valuation to be assessed."

■ There is no longer, as there once was, a presumption that the assessment as made is regular and correct. Milroy v. Board of Review, 226 N.W.2d 814, 817 (Iowa 1975); Tiffany v. Board of Review, 188 N.W.2d 343, 348 (Iowa 1971) and citations; § 441.39, The Code.

■ Valley Forge produced two disinterested witnesses—both real estate salesmen and appraisers—who testified the market value of the property was less than that fixed by the assessor. Under the statute, it then became the Board's burden to uphold the valuation as reasonable and proper. Wunschel v. Board of Review, 217 N.W.2d 576, 578 (Iowa 1974); Juhl v. Greene County Board of Review, 188 N.W.2d 351, 353 (Iowa 1971). As we understand the trial court's decree and the Board's appeal therefrom, the decisive question to be decided is whether the Board sustained this burden. The trial court found the Board failed to do so, and our de novo review of the record leads us to the same conclusion.

■ We say this because we find the assessor and the Board relied almost exclusively on certain guidelines as to cost and other data prepared by its appraiser, Vanguard Appraisal Company, to the complete exclusion of evidence offered by Valley Forge and its witnesses.

These guidelines were in the form of arbitrary amounts computed on the basis of the past experience of Vanguard Appraisal Company and used by it in numerous appraisals made by that company. They were not related to the property here involved, and, in fact, the evidence shows Vanguard Appraisal Company in "all cases" used its own schedules despite what evidence there might be to the contrary. The Board's expert unequivocally stated he would always rely on these schedules, regardless of what

the testimony might show in a particular case.

The trial court found, and we agree, this type of appraisal fell far short of overcoming Valley's direct and positive contrary evidence. *See Tiffany v. Board of Review, supra,* 188 N.W.2d at 348–349. The rule for which the Board argues would make it virtually impossible for a taxpayer to successfully challenge a valuation of his property since actual cost figures would perforce give way to the appraiser's all-purpose guidelines.

Our statute contemplates no such result. We have approved the use of guidelines to assist in reaching a true valuation, but we have said they may not be the sole method by which a result is reached nor may they serve as a substitute for the exercise of the assessor's judgment. *Maytag Co. v. Partridge, supra,* 210 N.W.2d at 592–593; *Tiffany v. Board of Review, supra,* 188 N.W.2d at 348–349. Yet that is how they were used in the present case. Valley's data was totally disregarded because the appraiser "didn't believe them."

Like trial court, we find this explanation entirely unsatisfactory. We point out the trial court specifically stated the Board's attack on the credibility of Valley's witnesses was unwarranted. From our review of the transcript, we reach the same conclusion.

Patently the appraiser (and the assessor) refused to accept Valley's cost figures simply because they conflicted with his own prepared cost schedule. This is precisely what *Maytag* and *Tiffany* forbid.

■ Viewing the entire record before us, including the transcript of evidence, we conclude the trial court's determination of value should be affirmed. The Board failed to sustain its burden under § 441.21 to show its valuation was correct.

In attacking the decree, the Board asserts the trial court failed to recognize or give effect to evidence concerning the equalization of assessments on apartment buildings in the Iowa City area.

We find no merit in this complaint. No matter how desirable equalization in tax assessments may be, the assessor may not use it as an excuse for failure to discharge his statutory duty with respect to burden of proof.

The judgment is affirmed on the Board's appeal.

■ II. There remains for determination Valley's appeal challenging the capitalization rate of 10.5% used by the trial court in fixing the value of the apartment buildings. Valley's witnesses had placed this figure at either 10.9% or 11%.

Capitalization of net income is one of the recognized methods of computing the value of income-producing real estate. *See City of Atlantic v. Board of Review,* 234 N.W.2d 880, 883 (Iowa 1975); *Golden Gate Corp. v. Providence Redevelopment Agency,* 106 R.I. 371, 260 A.2d 152, 154 (1970); *County of Riverside v. Palm-Ramon Development Co.,* 63 Cal.2d 534, 47 Cal.Rptr. 377, 407 P.2d 289, 292 (1965). After probable net income has been determined, that figure is capitalized to establish the actual value of the property. Capitalization is accomplished by dividing the net income by the reasonable rate of return the property should yield. The higher the divisor (rate of return), the lower will be the quotient (value of the property). Hence Valley argues for a higher rate of return than the trial court used. If successful, Valley would be entitled to a substantial reduction in valuation.

As shown by the testimony in the present record, use of the capitalization method is far from an exact science. There are always differences among the experts concerning not only a reasonable rate of return but also regarding items of cost and operating expenses to be considered in arriving at net income in the first place.

Valley Forge would have the trial court accept its testimony in its entirety. Of course, the trial court was not obliged to do so. The result reached is supported by the

record, is eminently fair, and should not be disturbed.

III. The judgment is accordingly affirmed on both appeals.

Affirmed on both appeals.